UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEPHEN FREDERICK PAUL CIOLINO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES DZURENDA, *et al.*,<br><br>Defendants. | Case No. 2:19-CV-00520-CLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[1]<br><br>[ECF No. 59] |

This case involves a civil rights action filed by Plaintiff Stephen Frederick Paul Ciolino ("Ciolino") against Defendants Romeo Aranas ("Aranas") and Michael Minev ("Minev") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 59, 61.)[2] Ciolino opposed the motion, (ECF No. 64), and Defendants replied. (ECF No. 66.) For the reasons stated below, Defendants' motion for summary judgment, (ECF No. 59), is granted.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Ciolino is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated at the High Desert State Prison ("HDSP"). (ECF No. 9.) On March 26, 2019, Ciolino filed his complaint pursuant to 42 U.S.C. § 1983, (ECF Nos. 1, 7), and on August 2, 2019, Ciolino filed his amended complaint, which is the operative complaint in this case. (ECF No. 9.) The amended complaint alleges an Eighth Amendment claim for deliberate indifference to serious medical needs relating to an alleged delay in treatment of his chronic hepatitis-C infection ("HCV"), and an Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claim related to his HCV. (*Id.*)

---

[1]     The parties have voluntarily consented to have this case referred to the undersigned to conduct all proceedings and entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 49.)

[2]     ECF No. 59 is Defendants' motion for summary judgment. ECF No. 61 consists of Ciolino's medical records filed under seal.

The amended complaint was screened pursuant to 28 U.S.C. § 1915A and Ciolino was permitted to proceed on his deliberate indifference against Defendants Aranas and Minev and ADA/RA claims against Defendants Aranas, Minev, the State of Nevada, and the NDOC. (ECF No. 17.) The screening order also dismissed any Eighth Amendment claim for damages against the State of Nevada and NDOC with prejudice. (*Id.* at 4.)

Ciolino alleges in Count I of his complaint that since his arrival at the NDOC in 2005, he has sought treatment for his HCV. (ECF No. 9 at 10.) Following many medical kites and many grievances, Ciolino alleges he has received no care at all for his HCV except for one blood draw. (*Id.*) While he "sought treatment" for his HCV over the years, "he did not vigorously pursue treatment" for his chronic HCV until May of 2015 when the standard of care throughout the United States and the world began to rapidly change to direct acting anti-viral drugs ("DAAs"). (*Id.* at 11.) Ciolino filed his first informal grievance seeking care for his HCV on May 3, 2015. (*Id.*) Ciolino received a response stating that none of Ciolino's medical requests were related to his HCV, and the grievance was denied. (*Id.*) Ciolino's first level grievance was answered by the same person with the same response as the response to the informal grievance. (*Id.*)

Defendant Aranas responded to the second level grievance, stating that he agreed with the response to the first level grievance. (*Id.*) However, Ciolino made a request prior to the first two grievances being answered. (*Id.* at 12.) Ciolino had a blood draw "between the above dates" to check his HCV. (*Id.*) Ciolino attempted to obtain his results and received only a cursory response telling him that his enzymes were fine. (*Id.*) Ciolino never was given an APRI score or a Fibrosure test or result. (*Id.*) At that time, Aranas was the NDOC's Medical Director and, according to an Administrative Regulation, the Medical Director is ultimately responsible for the medical decisions in the NDOC. (*Id.*) Defendant Minev succeeded Defendant Aranas as Medical Director in 2018. (*Id.* at 14.)

Ciolino alleges that he is symptomatic and continually seeks treatment for his HCV, complaining of liver and stomach pains, nausea, loss of appetite, bloating, loss of ability to concentrate and exercise, and "circulatory issues," but he is told he does not qualify for

treatment or is simply ignored. (*Id.* at 7, 15.) Ciolino concludes his rights under the Eighth Amendment have been violated. (*Id.*)

Count II alleges the following. Ciolino has a qualified disability, which is his HCV. (*Id.* at 17.) Ciolino has been symptomatic and asking for care. (*Id.*) "Plaintiff is being denied the standard of care based on his disability and the cost to treat it." (*Id.*) The State of Nevada and the NDOC provide inmates with medical services, including medical services to any inmate with high blood pressure, which can cause a heart attack or heart failure if untreated. (*Id.* at 18.) Inmates with diabetes also are cared for. (*Id.*) However, the State of Nevada and the NDOC deny Ciolino any care for his HCV because of the high cost to cure Ciolino's HCV. (*Id.*) Since 2015, the standard of care for HCV has been to provide DAAs to any patient with HCV. (*Id.*) The State of Nevada and the NDOC receive federal financial assistance. (*Id.* at 19.) There is knowledge of Ciolino's HCV and the failure or refusal to treat it is clear. (*Id.*) Ciolino concludes his rights under the ADA and RA have been violated. (*Id.* at 17.)

On February 15, 2022, Defendants filed the instant motion for summary judgment arguing, (1) Ciolino was treated appropriately and in accordance with the medical directives and standards of care, (2) none of the named Defendants are Ciolino's treating physician, (3) Ciolino has not met the requirements to pursue a claim under the ADA or RA, and (4) all Defendants are entitled to qualified immunity. (ECF No. 59.)

## II.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine"

only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the non-moving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the non-moving party. *Colwell v. Bannister,* 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its

burden for summary judgment, the non-moving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the non-moving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The non-moving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the non-moving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the non-moving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his contentions in motions and pleadings may be considered as evidence to meet his burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

*of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a non-moving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**III.   DISCUSSION**

    **A.   Eighth Amendment – Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**1.   Analysis**

Starting with the objective element, the parties agree that Ciolino's HCV constitutes a "serious medical need." However, Defendants argue summary judgment should be

granted because Ciolino cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Ciolino's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Ciolino's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Ciolino to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence regarding the medical treatment Ciolino received related to his HCV. (*See* ECF Nos. 61-1, 61-2, 61-3, 61-4, 61-5, 61-6, 61-7 (sealed).) Ciolino was first enrolled in the Chronic Disease Clinic in 2015. (ECF No. 61-1 (sealed).) Ciolino received routine care through the Chronic Disease Clinic for his HCV. (ECF No. 61-4 (sealed).) Ciolino filed medical kites requesting treatment for his HCV beginning in May 2015. (ECF No. 59-1.) On May 3, 2015, Ciolino filed a grievance claiming he needed treatment for his HCV. (ECF No. 59-2.) Lab work performed in September 2019 showed Ciolino's AST score was within the normal range and his APRI score was 0.33, which did not qualify him for treatment at that time. (ECF Nos. 61-3 at 11-12 (sealed).) Ciolino's Fibrosure score in October 2019 was 0.27, which indicated "Stage F0 – F1". (*Id.* at 9.)

Ciolino was referred for treatment to the Hep-C Committee on February 21, 2020. (ECF No. 59-1 at 15.) In May 2020, Ciolino's Fibrosure score was 0.11, which indicated "No fibrosis". (ECF No. 61-2 at 2 (sealed).) Ciolino was ultimately approved for Epclusa treatment for his HCV on May 13, 2021. (ECF No. 61-6 (sealed).) Prior to starting his treatment, Ciolino received an abdominal ultrasound on July 19, 2021. (ECF No. 61-5 (sealed).) The ultrasound showed "no focal hepatic masses" of the liver and "no upper

abdominal ascites." (*Id.*) Physician's Orders indicate Ciolino began Epclusa treatment on July 22, 2021. (ECF No. 61-6 at 3 (sealed).) Ciolino no longer shows HCV in his system. (ECF No. 59-4.)

Defendant Aranas, former NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating that his only involvement or interaction with Ciolino was as a grievance responder, and because he did not examine Ciolino he "cannot speculate on any kind of treatment." (ECF No. 59-5.)

Defendant Minev, current NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating that he reviewed Ciolino's medical records and can attest that Ciolino suffers from Chronic Hepatitis C and his APRI score, based on blood test results in September 2020, was 0.33. Ciolino did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Ciolino's APRI score and lack of clinical signs indicating decreased liver function, Ciolino was not a candidate for HCV treatment at the time of his grievance. Ciolino has since received treatment and no longer shows HCV in his system. (ECF No. 59-4.)

Defendants have submitted evidence that establishes they affirmatively monitored and ultimately treated Ciolino's HCV and Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Ciolino to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Ciolino's opposition reiterates his claim that the delay in providing him treatment for his HCV caused him further damage and caused him to become "sick." (ECF No. 64.) Ciolino asserts that he is currently suffering from a "partially diseased gallbladder with gallstones," which he asserts was directly caused by the delay in treatment of his HCV. (*Id.* at 2, 6, 8.) Ciolino points to the abdominal ultrasound performed on July 19, 2021, as evidence of his gallstones. (*Id.* at 6; ECF No. 61-5 (sealed).) However, Dr. DeZastro's

9

impression does not state that Ciolino's gallstones are <u>caused</u> by his HCV, but rather simply notes "[t]here are gallstones." (ECF No. 61-5 at 2 (sealed).) Dr. DeZastro further states Ciolino "would benefit from contrast enhanced CT imaging of the upper abdomen." (*Id.* at 3.) Aside from the abdominal ultrasound and impression from Dr. DeZastro, Ciolino provides no further evidence or support for his assertion that a delay in treatment for his HCV was <u>the cause</u> of issues with his gallbladder. Further, while Ciolino acknowledges that he ultimately received treatment for his HCV, he newly alleges—again with no evidence or support—that his body was further damaged by the DAA treatment. (*Id.* at 3, 7.) Aside from Ciolino's own conclusions and statements, he has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Ciolino was treated for his HCV and there is no evidence showing that his HCV was <u>the cause</u> of any damage. Therefore, Ciolino has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Ciolino's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Ciolino has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Ciolino fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Ciolino has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his HCV monitored for progression.

Based on the above, Defendants' motion for summary judgment as to the Eighth Amendment deliberate indifference claim is granted.

### B. ADA and RA

Both the ADA, 42 U.S.C. § 12132, and the RA, 29 U.S.C. § 794 or Section 5, apply in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to the RA, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A prison inmate states a colorable claim under both the ADA and RA if he alleges that he was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).

However, the Ninth Circuit has held that "the ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added); *see also Marlor v. Madison County*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (stating that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). "Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making 'an end run around the Eighth Amendment.'" *King v. Calderwood*, 2:13-cv-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister,* 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Ciolino's opposition states he is "a certified protected person under the ADA with [verifiable] mental impa[i]rments and learning handicap[]s." (ECF No. 64 at 7.) Aside from this blanket assertion, Ciolino provides no argument or evidence that he was improperly excluded from participation in, and denied the benefits of, a prison service, program, or

activity based on his HCV, as is required under the ADA and RA. To the extent Ciolino's ADA/RA claim is based on his allegation that Defendants failed to give him adequate medical treatment for his disability, that claim would simply be making "an end run around the Eighth Amendment". As discussed above, Defendants were not deliberately indifferent to his serious medical needs and Ciolino cannot use the ADA/RA as an alternative basis to recover damages.

Based on the above, Defendants' motion for summary judgment is granted as to the ADA/RA claim.[3]

### IV.  CONCLUSION

For good cause appearing and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, (ECF No. 59), is granted; and

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: March 23, 2022           .

                                      **UNITED STATES MAGISTRATE JUDGE**

---

[3]  Because the Court finds that Ciolino's claims fail on the merits, and is granting the motion in its entirety, the Court need not address the other arguments or defenses presented in Defendants' motion.